IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| APRIL WRIGHT, Individually and on Behalf of all Others Similarly Situated,<br><br>                Plaintiff,<br><br>v.<br><br>WALMART, INC.,<br><br>                Defendant. | Case No. 22-cv-02311-SPM |

## MEMORANDUM AND ORDER

### McGLYNN, District Judge:

Pending before the Court is a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendant Walmart, Inc. ("Walmart") (Doc. 12). A supporting memorandum of law was filed contemporaneously with the motion (Doc. 13). Plaintiff April Wright ("Wright") filed a memorandum in opposition to the motion (Doc. 20) and Walmart replied (Doc.22). Walmart filed supplemental authority in support of their argument, pointing to a decision in a similar case in the Northern District of Illinois[1] (Doc. 25). Additionally, this Court recognizes another decision, also from the Northern District of Illinois, that similarly involved claims surrounding hydrogen peroxide[2] (D/E 28). For the reasons set forth below, the Court **GRANTS** the Motion to Dismiss in its entirety.

---

[1] See *Abron v. Vi-John, LLC.,* 22C50238 (N.D. Ill. June 20, 2023).

[2] See *Novotny v. Walgreen Co.,* 22C3439 (N.D. Ill. July 20, 2023).

## BACKGROUND

The following facts are taken from Wright's complaint (Doc. 1) and are accepted as true for purposes of Walmart's motion to dismiss. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011).

Walmart manufactures, labels, and sells three percent hydrogen peroxide solution ("solution") (Doc. 1, ¶ 1). Wright reproduced the following picture of the solution packaging in her complaint.



As depicted, the solution bottle is brown and contains a front label that is partially white and partially purple. In white font on the the purple section, is the word "Antiseptic", underneath which are the following three bullet points: "• For treatment of minor cuts and abrasions"; "• Oral debriding agent"; and, "• Use as a gargle or rinse".

The complaint is directed against the label representation that the solution should be used "[F]or treatment of minor cuts and abrasions" (Doc. 1, ¶3). According to Wright, this statement tells consumers it will assist in healing by shortening healing time (Id.). In other words, Wright claims that the statement is "false, misleading, and not authorized by any healing body.

Wright also included the rear of the solution packaging, along with a blown up version of part of the label. According to the label, the active ingredient in the solution is Hydrogen peroxide 3% and the purpose is as a [f]irst aid antiseptic/oral debriding agent (Doc. 1). Additionally, the label indicates that one of the uses of the solution is "first aid to help prevent the rush of infection in minor cuts, scrapes, and burns" (Id.).

Wright is a citizen of Chester, Randolph County, Illinois, which is located within the Southern District of Illinois (¶ 28). Walmart sells a number of products under its private label Equate brand (¶ 31). Between September 28, 2020 and September 28, 2022, Wright purchased the solution at Walmart, 2206 State Street, Chester, IL 62233 (¶ 41). Wright "believed and expected the [solution] could treat minor cuts and abrasions" (¶ 42). Wright claims she bought the [solution] "at or exceeding the" market value (¶ 44). She further claims that she "paid more than she would have paid based on the false and misleading statements and omissions" (¶ 46).

Based on these allegations, Wright brings this putative class action complaint against Walmart and seeks certification of the following two classes: (1) **Illinois Class:** All persons in the State of Illinois who purchased the [solution] during the statutes of limitations for each cause of action alleged; and, (2) **Consumer Fraud Multi-State Class:** All persons in the States of Alaska, Montana, Wyoming, Arkansas, Idaho, Kentucky, West Virginia, Kansas, Iowa, Mississippi, Nebraska, and Utah, who purchased the [solution] during the statutes of limitations for each cause of action alleged (¶ 49).

Wright asserts the following claims: (1) Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) Violations of various state consumer fraud acts (Consumer Fraud Multi-State Class); and (3) Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose, and Magnuson Moss Warranty Act, 15 U.S.C. §2301, *et seq.* (Doc. 1). Wright seeks both injunctive and monetary relief (*Id*. at 12).

On April 4, 2023, Walmart filed its motion to dismiss the Complaint in its entirety along with supporting memorandum of law (Docs. 12, 13). Within its motion, Walmart raised the following arguments to support dismissal: (1) Plaintiff's state law claims are expressly preempted because they seek to impose requirements in addition to those established by federal law; (2) Plaintiff has not adequately pled her fraud claims; (3) Plaintiff has not asserted viable warranty claims; and, (4) Plaintiff has not alleged that equitable remedies are appropriate (*Id.*).

On May 5, 2023, Wright filed her Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint wherein Wright attempts to rebut each

and every argument asserted by Walmart (Doc. 20). Specifically, Wright contends that her claims are plausible and viable, that preemption does not apply, that she has standing to pursue non-Illinois claims, that her warranty claims satisfy the elements, and that her common law claims are adequately pled (*Id*.). Wright further asserts that she has standing to seek injunctive relief (*Id*.).

On May 19, 2023, Walmart filed its reply (Doc. 22). Additionally, as hereinbefore indicated, Walmart filed a recent decision involving similar claims regarding hydrogen peroxide, *to wit: Abron v. Vi-Jon, LLC,* 22-cv-50238 (N.D. Ill. June 20, 2023) (Doc. 25). This Court also took judicial notice of another recent decision out of the Northern District, *i.e., Novotny v. Walgreen Co.*, 22c3439 (N.D. Ill. July 20, 2023) (Doc. 27).

**JURISDICTION AND VENUE**

The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Under CAFA, federal courts have jurisdiction over cases in which: (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any Defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6). Here, Wright alleges diversity exists because she is a citizen of Illinois and Walmart is a Delaware corporation with its principal place of business in Bentonville, Arkansas, Benton County (Doc. 1, ¶ 24). She also claims that the aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages (Id., ¶ 22). As for the number of persons, Wright claims members exceeds 100 (Id., ¶ 26).

Venue is proper as a substantial part of the events giving rise to the claim

occurred within this district. 28 U.S.C. § 1391(b). Indeed, Wright alleged that she purchased the solution at the Chester Walmart (Id., ¶¶ 27, 41).

## LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim that is plausible on its face.'" *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 577 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams,* 742 F.3d at 728 (quoting *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief: it must actually suggest that the plaintiff has a right to relief … by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the non-moving party, accept(s) well-pleaded facts as true, and draws all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal,* 566 U.S. at 678).

## ANALYSIS

### I. Preemption

Walmart first argues that Wright's state law claims are expressly preempted by federal law and should be dismissed (Doc. 13). In support of their preemption argument,

Page 6 of 19

Wal-Mart extensively delves into over-the-counter medication ("OTC") approval and regulation through the Food and Drug Administration ("FDA") (Id, p. 2).

### A. Law

The preemption doctrine stems from the Supremacy Clause: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI. The Supremacy Clause provides " 'a rule of decision' for determining whether federal or state law applies in a particular situation." *Kansas v. Garcia*, — U.S. —, 140 S. Ct. 791, 801 (2020), quoting *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015). In cases where federal and state law conflict, "federal law prevails and state law is preempted." *Murphy v. NCAA*, —— U.S. ——, 138 S. Ct. 1461, 1476 (208). The federal government's advantage under the Supremacy Clause is "an extraordinary power in a federalist system," and it is "a power that we must assume Congress does not exercise lightly." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).

Federal law can preempt state or local laws in three different ways: express preemption, field preemption, and conflict preemption. *Aux Sable Liquid Products v. Murphy,* 526 F.3d 1028, 1033 (7th Cir.2008). Express preemption, which Walmart is asserting, occurs when a federal statute explicitly states that it overrides a state or local law that is inconsistent with the language of the preemption. *Id.*

The Food, Drug, and Cosmetics Act ("FDCA") regulates the marketing and labeling of drugs. *See* 21 U.S.C. § 301 *et seq*. In its motion, Walmart relies on the preemption provision of the Food, Drug, and Cosmetics Act ("FDCA") which states in pertinent part:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—(1) any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title. 21 U.S.C. § 379 r(a).

The term "requirements" reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties. *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 443 (2005). A requirement is a rule of law that must be obeyed. *Id.* at 445 (The proper inquiry calls for an examination of the elements of the common law duty at issue; it does not call for speculation as to whether a jury verdict will prompt the manufacturer to take any particular action.). A common law rule that "requires that manufacturers label or package their products in a particular way" qualifies as a requirement with respect to labeling. *Id.* at 444.

States can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements. 21 U.S.C. §343-1(a)(1); *Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014). Thus, to avoid preemption, a state law claim related to misleading labeling must allege a violation of the FDCA. *Turek v. Gen. Mills, Inc.*, 754 F.Supp. 2d 956, 958 (N.D. Ill. 2010) (quoting *Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 521 (1992)), *aff'd*, 662 F.3d 423 (7th Cir. 2011).

## B. Discussion

In her complaint, Wright asserted that the Walmart packaging violated the ICFA as well as the consumer fraud acts of the purported multi-state class (Doc. 1, p. 8). She claimed to rely on the label's representation that the solution could treat minor cuts and

abrasions and inferred that use of the solution lessened healing time (Doc. 1, p. 2).

While preemption is an affirmative defense that is usually asserted in an answer, not a motion to dismiss, it is appropriate to grant a Rule 12(b)(6) motion to dismiss "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Sidney Health Ctr. Of Rochester v. Abbott Lab'ys, Inc.,* 782 F.3d 922, 928 (7th Cir. 2015). Furthermore, judicial economy supports disposition of a case sooner rather than later and prevents unnecessary preparation of multiple documents. *See Carr v. Tillery*, 591 F. 3d 909, 913 (7th Cir. 2010) (preemption asserted in Rule 12(b)(b) motion to dismiss is appropriate when Court had before it "all that is needed in order to … rule on the defense); *see also Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004).

This Court has taken judicial notice of the two Orders entered by District Judges Reinhard and Alonso within the Northern District and concurs with the opinions rendered therein[3]. As hereinbefore demonstrated, the FDCA regulates the marketing and labeling of drugs; however, before marketing their products, manufacturers must first apply to the Food and Drug Administration ("FDA"). *See* 21 U.S.C. § 301 *et seq.* Indeed, the FDA regulates over-the-counter drugs, including hydrogen peroxide, and determines the safety and efficacy of usage prior to marketing[4]. 21 U.S.C. § 355(a), (b), (j); *Wyeth v. Levine*, 555 U.S. 555, 566 (2009).

No drug can enter interstate commerce "unless [the] FDA determines that it is

---

[3] *Abron v. Vi-John, LLC.,* 22C50238 (N.D. Ill. June 20, 2023), and, *Novotny v. Walgreen Co.,* 22C3439 (N.D. Ill. July 20, 2023).

[4] The Secretary of Health and Human Services has "authority to promulgate regulations for the efficient enforcement" of the FDCA and this responsibility is delegated to the FDA. 21 U.S.C.A. § 371(a); 21 U.S.C. § 393(a), (b), and (d)(2).

generally recognized as safe and effective ("GRAS/E") for the particular use described in its product labeling." *Nat. Res. Def. Council, Inc. v. U.S. FDA*, 710 F.3d 71, 75 (2d Cir. 2013) (addressing new drug regulation). How the FDA determines whether a drug is GRAS/E depends on the applicable regulatory scheme. Once a drug is deemed GRAS/E, it is a "central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times." *Wyeth v. Levine*, 555 U.S. 555, 570-71 (2009).

In 1972, the FDA developed a separate regulatory process, known as the monograph system, for the approval of classes of over-the-counter ("OTC") drug products and their active ingredients. As the Second Circuit has explained:

> Commenced in 1972, the OTC Drug Review established FDA's "monograph" system for regulating over-the-counter drugs. While FDA must generally approve drugs as GRAS/E individually, the monograph system allows manufacturers to bypass individualized review. Under this system, FDA issues a detailed regulation -- a "monograph" -- for each therapeutic class of OTC drug products. Like a recipe, each monograph sets out the FDA-approved active ingredients for a given therapeutic class of OTC drugs and provides the conditions under which each active ingredient is GRAS/E. *NRDC*, 710 F.3d at 75 (citation omitted).

Since a 1991 monograph, the FDA has regulated 3% hydrogen peroxide solution for antiseptic use. *See Topical Antimicrobial Drug Products for Over-the-Counter Human Use;* Tentative Final Monograph for First Aid Antiseptic Drug Products, 56 Fed. Reg. 33644 (July 22, 1991). Furthermore, as recently as May 2, 2023, the FDA posted its Final Administrative Order dealing with Hydrogen Peroxide as an Over-the Counter Monograph M003, finding it "GRAS/E", which stands for "generally recognized as safe and effective." Nevertheless, Wright still tries to circumvent preemption by arguing that

the very claims made on the packaging, i.e. "For Treatment of Minor Cuts & Abrasions", induced her to purchase the product in violation of the ICFA, but that is the very conduct that the FDCA regulates. Hydrogen peroxide is regulated as a topical antiseptic and it has achieved GRAS/E status when used in that matter; the ICFA cannot impose additional requirements. Moreover, the FDA regulates the contents of labels and controls the information the labels the convey. Specifically, "any labeling requirement that is different from or in addition to, or that is otherwise not identical with, a requirement imposed under federal law is subject to preemption". 21 U.S.C. §379r(a)(2).

Wright's leap from the treatment of minor cuts and scrapes to a shortened healing time was wholly unsupported. Indeed, the back panel even specifies that the solution should be used in "first aid to help prevent the risk of infection in minor cuts, scrapes, and burns". The FDA has approved the solution as an antiseptic and has the authority to regulate the package labelling and marketing. Any discrepancies are *de minimis,* and as recently cited by Judge Alonso, there is no claim "if it is clear that the label in question complies with federal standards by advertis[ing] ... accurate[ly] the uses for which the product has been approved as safe and effective. *See Novotney v. Walgreen Co.* 2023 WL 4698149 (N.D. Ill. July 7,2023) citing *Sapienza v. Albertson's Cos., Inc.*, No. CV 22-10968-RGS, 2022 WL 17404919, at *3 (D. Mass. Dec. 2, 2022) ("FDA preemption regulates [the relevant] standards generally – even if the wordings slightly differ." (citing cases)). The legislative history of the preemption provision at issue also supports this "commonsense interpretation." *Id.* (citing S. Rep. No. 105-43, at 64 (1997)) ("No State or local government is permitted to impose different or additional requirements that *relate to the subject matter* covered by the three Federal laws as they

apply to nonprescription drugs and cosmetics. These include requirements imposed on product manufacture or composition, *labeling*, advertising, or any other form of public notification or communication.") (emphasis added). Clearly, Walmart has complied with the federal standards; accordingly, Wright's claims are preempted. However, even if her claims are not preempted by federal law, she still fails to state a claim upon which relief can be granted.

## II. Fraud-Based Claims

Walmart next claims that Wright has not adequately alleged her fraud-based claims (Doc. 13). In response, Wright alleges that her claims under ICFA and similar state consumer protection statutes are plausible and viable (Doc. 20, p. 2).

### A. Law

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This heightened pleading requirement was intended to protect against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Thus, pursuant to Rule 9(b), a plaintiff must "describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.' " *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7t Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 853 (7th Cir. 2009). This heightened Rule 9(b) standard applies to fraud claims, including deceptive conduct claims under the ICFA.

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), prohibits "unfair or deceptive acts or practices, including … deception, fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment … in the conduct of any trade or commerce." 815 ILCS 505/1, *et seq*. A claim brought under the ICFA requires: (1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and, (4) actual damages to the plaintiff; (5) proximately caused by the deceptive act. *Phila Indem. Ins. Co. v. Chi. Title Ins. Co.,* 771 F.3d 391, 402 (7th Cir. 2014) (citing *DeBouse v. Bayer AG,* 235 Ill.2d 544 (2009).

## B. Discussion

The first inquiry under the ICFA is whether there was a deceptive act or practice. *See Siegel v. Shell Oil Co.,* 612 F,3d 932 (7th Cir. 2010). Wright alleges that the front of the label deceptively stated, "For treatment of minor cuts and abrasions" (Doc. 1, ¶ 8).

Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). It is not enough to allege that the product misled a particular plaintiff, rather the statement must be "likely to deceive a *reasonable* consumer." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020) (emphasis added). In other words, there must be a "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) (internal quotations and citation omitted). This is *not* the least sophisticated consumer test. *Cf. Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012).

Whether a statement is deceptive is usually a question of fact. *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022). However, a court may dismiss a ICFA claim "if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (Citing *Bober,* 246 F.3d at 938. "Treatment" is subject to a multitude of definitions[5] and plaintiff has not plausibly shown that the statement was deceptive. Furthermore, her jump from "for treatment of minor wounds and scrapes" to a shortened healing time is conclusory with zero factual support.

The Seventh Circuit has held that a statement or label cannot mislead unless it actually conveys untrue information about a product. *Bober,* 246 F.3d at 938 (statements claiming that drugs were different medications were not deceptive because "that claim [was] completely true"). There are no untruths on the packaging and there is no deception. Indeed, the FDA has found that hydrogen peroxide is an antiseptic that is both safe and effective for use in minor wounds. 56 FR 33644 at 33659. There was no ambiguity that the solution could be used on minor wounds and scrapes. As such, any claims brought under the ICFA are dismissed.

**III.    Warranty Claims**

In the complaint, Wright asserts claims under three separate warranty theories: (1) Breach of express warranty; (2) Breach of implied warranty of merchantability/fitness for a particular purpose; and, (3) Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* (Doc. 1, p 9).

---

[5] Both Wright and Walmart assert distinct definitions, depending upon the dictionary used.

### A. Law

#### 1. Express Warranty

Under Illinois law, a description of goods can create an express warranty: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." 810 ILCS 5/2-313. With this statutory overlay, the express warranty is a "creature of contract." *Collins Co. v. Carboline Co.*, 125 Ill.2d 498 (1988). To adequately plead a breach of express warranty, a plaintiff must allege: "(1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Lambert v. Dollar Gen. Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017).

#### 2. Implied Warranty

Under Article 2 of the Uniform Commercial Code (UCC), as adopted by Illinois, to state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. 810 Ill. Comp. Stat. Ann. 5/2-314; *Solvay USA v. Cutting Edge Fabrications, Inc.,* 521 F.Supp.3d 718, 725 (N.D. Ill. Feb. 22, 2021). To be merchantable, the goods must "pass without objection in the trade under the contract description" and must be "fit for the ordinary purposes for which such goods are used." *Id.*

"While the Federal Rules of Civil Procedure allow for liberal notice pleading, conclusory allegations regarding the [good's] merchantability and fitness are not sufficient to state a claim for breach of implied warranty of merchantability absent some factual support." *Id.* (citing *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985) (holding that "bare legal conclusions" are insufficient to survive a 12(b)(6) motion where a plaintiff failed to include factual allegations in support of the elements of a claim)).

### 3. Magnuson Moss Warranty Claims

The Magnuson Moss Warranty Act ("MMWA") is a remedial statute designed to protect consumers against deceptive warranty practices. *Skelton v. Gen. Motors Corp.,* 660 F.2d 311, 313 (7th Cir. 1981); *Anderson v. Gulf Stream Coach, Inc.,* 662 F.3d 775, 782 (7th Cir. 2011). It provides a federal private cause of action for a warrantor's failure to comply with the terms of a "written warranty, implied warranty or service contract." *Voelker v. Porsche Cars N. Am., Inc.,* 353 F.3d 516, 522 (7th Cir.2003) (quoting 15 U.S.C. § 2310(d)(1)). In claims brought under the MMWA, state law governs the creation of implied warranties. *Voelker,* 353 F.3d at 525. The Act does not create implied warranties, but instead confers federal court jurisdiction for state law breach of implied warranty claims. See *Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955, 956 (7th Cir.1998); see also *Schimmer v. Jaguar Cars,* 384 F.3d 402, 405 (7th Cir.2004) (MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.").

## B. Discussion

As set forth *infra*, the FDA regulates 3% hydrogen peroxide solution for antiseptic use and has deemed it GRAS/E. Wright claims that Walmart promised the solution could treat minor cuts and abrasions but has not shown how the solution failed to comply with this express approval under the FDA – as an antiseptic used in minor cuts and abrasions. Wright inferred that the solution shortened treatment time, but that was not expressly stated. As for any implied warranty, Wright's allegations are conclusory at best. She has not provided any support for her allegations that the solution was defective and did not aid in the treatment of minor cuts and abrasions.

Nothwithstanding the foregoing, Wright failed to make a demand upon Walmart prior to this suit and failed to provide notice to Walmart regarding any alleged defect. Finally, Wright asserted her claims for breach of express warranty, implied warranty of merchantability and MMWA in the same section (Doc.1, p 9). Since Illinois law prevails and this Court has dismissed both the express and implied warranties for failing to properly allege a state law claim, any MMWA counts are dismissed as well. See *Schiesser v. Ford Motor Co.,* No. 16 CV 730, 2016 WL 6395457 at *4 (N.D. Ill. Oct. 28, 2016).

## IV. Equitable Remedies

Walmart's final argument is the Wright has not alleged that equitable remedies are appropriate.

### 1. Unjust Enrichment

In Illinois, unjust enrichment is an equitable remedy that is available when no adequate remedy at law exists. *Guinn v. Hoskins Chevrolet,* 836 N.E.2d 681, 704 (Ill.

Page 17 of 19

App. 1st Dist. 2005)). To state a cause of action for unjust enrichment, plaintiffs must "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989).

Wright alleges that Walmart "obtained benefits and monies because the [solution] was not as represented and expected" (Doc. 1, ¶ 785). However, that is not enough. Additionally, because her claim is predicated on the same allegations as asserted under the ICFA and express warranty claims, it too must fail. *See Floyd v. Pepperidge Farm, Incorporated,* 581 F.Supp.3d 1101 (S.D. Ill. 1/24/2022). Indeed, plaintiff's unjust enrichment claim "will stand or fail" with related claims of "the same [alleged] improper conduct". *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

### 2. Injunctive Relief

To have standing to pursue injunctive relief, Wright must show that **she** faces—going *forward*—a "real and immediate threat of future injury" from Walmart's actions. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). The equitable remedy of injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again ....". *Lyons*, 461 U.S. at 111.

Wright seeks injunctive relief "by directing [Walmart] to correct the challenged practices to comply with the law" (Doc. 1, p. 12). Pursuant to Article III, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *Lyons*, 461 U.S. at 109, and describing the holding of that case as "notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief").

Wright seeks injunctive relief against Walmart's labeling practices under various theories of liability; however, she has not alleged future harm (Doc. 1). In challenging her standing to pursue injunctive relief, Walmart argues that Wright cannot be harmed in the future (Doc. 12-1). This is true.

## CONCLUSION

For the reasons set forth above, and because Floyd has failed to plausibly allege any cause of action, defendant Pepperidge Farm, Incorporated's motion to dismiss is **GRANTED** in its entirety.

Although a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) is usually granted at least one opportunity to try to amend her complaint, it would be futile in this case as the federal law of preemption is applicable. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana,* 786 F.3d 510 (7th Cir. 2015). Therefore, this case is dismissed with prejudice.

**IT IS SO ORDERED.**

**DATED: August 21, 2023**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**